**In the Interest of: D.L.W. and A.M.J.W., Minors.**

**No. ED 98307.**

Missouri Court of Appeals, Eastern District, Division Three.

Oct. 30, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2013.

Application for Transfer Denied March 19, 2013.

John R. Bird, St. Louis, MO, for Appellant.

Allie Wolff, Clayton, MI, for Respondent.

Division Three: ROBERT G. DOWD, JR., ANGELA T. QUIGLESS, J., concur.

ROY L. RICHTER, Judge.

Appellant, R.L.W., ("Father") appeals from the trial court's judgment terminating his parental rights with his children A.M.J.W. and D.L.W. (collectively, "Children"). Father alleges that the trial judge erred in failing to grant his motion for continuance and, further, that the trial judge erred in admitting evidence of his unsuccessful completion of sex-offender counseling. We affirm the trial court's denial of Father's motion for continuance and affirm the court's judgment terminating Father's parental rights.

## I. BACKGROUND

On February 15, 2008, the trial court found that Father had abused or neglected his daughter, A.M.J.W., finding that he had sexually abused her through inappropriate digital contact to her vaginal area.[1] Thereafter, the trial court assumed jurisdiction over A.M. J.W. and son, D.L.W. Both children were removed from the home and placed in foster care. Next, the trial court entered a dispositional order and approved a written service plan, both of which directed Father and the Missouri Department of Social Services, Children's Division ("Children's Division"), to undertake and complete certain tasks in an attempt reunify the family.

The components of the court-ordered service plan mandated Father engage in sexual-offender counseling and denied visitation rights with Children until Children's therapists' approved. For the next three years, Father was never granted visitation rights, however, he considerably complied with the service plan, including attending all court hearings, paying monthly child support, and attending the sexual-offender counseling. Nonetheless, Father was un-

successful at completing the sexual-offender counseling because he was unwilling to admit he sexually abused his daughter, this being viewed as a necessary component of successful treatment. Thus, on March 10, 2011, the Children's Division filed petitions seeking the termination of Father's parental rights based upon abuse and neglect, abandonment, and parental unfitness.

Termination of parental rights petitions were scheduled for trial on January 13, 2012. On January 6, 2012, Father filed a motion to continue the trial to January 19, 2012. The Children's Division consented to the motion and the trial court granted the continuance. On January 19, 2012, the date requested by Father, the trial court called the petitions for termination of parental rights, but Father was not present. Father's counsel made an oral motion for continuance, which was denied by the trial court. The termination trial proceeded. At that termination trial, Father's counsel did not make an offer of proof establishing how Father could have contributed to assisting his counsel, nor did Father's counsel call any witnesses on behalf of Father.

Thereafter, on January 26, 2012, at the request of Father, the trial court heard Father's arguments and evidence regarding Father's non-appearance at the January 13 and 19 trial dates and reconsidered Father's motion for continuance. During this hearing, Father invoked his Fifth Amendment rights multiple times and provided little evidence as to his inability to be present at the January 13 and 19 trial dates. Again, the trial court denied Father's motion for continuance because the trial court did not find Father's explanation credible.

1. The Legal File does not contain the evidence relied upon by the trial court in finding Father sexually abused his daughter.

On February 21, 2012, the trial court entered its judgment terminating Father's parental rights. This appeal follows.

## II. DISCUSSION

Father raises two points on appeal. In his first point, Father alleges that the trial court erred in denying his motion for continuance in violation of his due process rights. Second, Father contends that the trial court erred in admitting evidence of his unsuccessful completion of sex-offender counseling in violation of his Fifth Amendment right against self-incrimination. For ease of analysis, we will address Father's second point before his first.

### A. Standard of Review

The standard of review of judgments terminating parental rights is based on the requirements of Section 211.447.5 [2]: (1) the trial court must find "clear, cogent, and convincing evidence" that one or more grounds for termination exists under subsections 2, 3, or 4 of Section 211.447.5; and (2) termination must be in the best interest of the child. *In re S.R.J., Jr.*, 250 S.W.3d 402, 406 (Mo.App. E.D.2008). Accordingly, under the first prong, "appellate courts defer to the trial court's ability to judge the credibility of witnesses and will affirm the judgment unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law." *In re A.S.W.*, 137 S.W.3d 448, 452 (Mo. banc 2004); *see also Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Further, clear, cogent and convincing evidence is defined as evidence which "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re A.S.W.*, 137 S.W.3d at 453.

After a determination that one or more statutory grounds have been proven, the court must then consider if termination is in the best interest of the child. *In re P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004). With regard to this second prong, at trial the standard of proof is preponderance of the evidence and on appeal the standard of review is abuse of discretion. *Id.* Thus, the appellate court defers to the trial court and views the evidence in the light most favorable to the trial court's judgment. *Id.*

### B. Point II—Admissibility of Father's Unsuccessful Completion of Sex–Offender Counseling Evidence

Father's second point claims that the trial court erred in admitting evidence of his failure to successfully complete sex-offender specific counseling in violation of his Fifth Amendment rights. Thus, Father contends that if such evidence would have been ruled inadmissible, the trial court would have been unable to terminate his parental rights as the record would be void of any clear, cogent and convincing evidence regarding grounds for termination under Section 211.447.5. We disagree.

A trial court has broad discretion to admit or exclude evidence at trial, and the trial court's decision will not be disturbed absent abuse of discretion. *Mitchell v. Kardesch*, 313 S.W.3d 667, 674–75 (Mo. banc 2010). In other words, this discretion is abused, and error is found, only when a ruling is "clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005). "When reviewing for an 'abuse of discretion' we presume the trial court's finding is correct[.]"

---

**2.** All statutory references are to RSMo 2000, unless otherwise indicated.

*Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 872 (Mo.App. E.D.2009). However, even if this Court were to find the trial court abused its discretion, an appellate court will reverse "only if the prejudice resulting from the improper admission of evidence is outcome-determinative." *Id.*

Father's failure to complete the sex-offender counseling was based on his unwillingness to admit he sexually abused his daughter, this being viewed as a necessary component of successful treatment.[3] Thus, Father argues that the admission of evidence regarding his unsuccessful completion of sex-offender specific counseling—as required by the trial court's dispositional order and service plan—was in violation of his Fifth Amendment right against compulsory self-incrimination.

■ The Fifth Amendment, in part, provides that no person "shall be compelled in any criminal case to be a witness against himself." *See* U.S. Const. amend. V. This privilege applies equally to allow a person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v.*

*Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973)) (internal quotations omitted). Accordingly, the Fifth Amendment shields an individual from "being compelled to provide testimonial evidence against himself which may then be used to prosecute him." *State v. Sanders*, 842 S.W.2d 170, 173 (Mo.App. E.D.1992).

Missouri courts have yet to determine whether forcing a parent to confess to child or sexual abuse in court-ordered therapy as a condition of family reunification violates the parent's privilege against self-incrimination.[4] An examination of case law from other jurisdictions provides several options, but no clear solution.

A few jurisdictions hold an admission of wrongdoing as a condition to successful completion of court-ordered counseling is offensive to a parent's Fifth Amendment right against self-incrimination. In a case decided by the Ohio Court of Appeals, the daughter, Amanda, alleged that her father had sexually abused her. *In re Amanda W.*, 705 N.E.2d 724, 725–26 (1997). Amanda's parents admitted that someone had abused Amanda, but denied that the abus-

---

3. Father is placed in a precarious position: either continue to deny he sexually abused his daughter, thus forgoing any hope of completing the counseling, and, therefore, the service plan, or admit to the sexual abuse, which could possibly be used against him during a future termination of parental rights ("TPR") or criminal proceeding. The trial court and the Children's Division have put Father in a "Catch 22" situation: Father has two choices, either of which results in negative ramifications. *See e.g., State v. Brown*, 286 Kan. 170, 182 P.3d 1205, 1211 (2008), quoting *State v. Brown*, 37 Kan.App.2d 726, 157 P.3d 655, 660 (2007) ("when a parent is essentially compelled to choose between confessing guilt in abusing his or her own child or losing his or her parental rights, the choice is between two fundamental rights under the Constitution").

4. Respondent asserts that *Spencer v. State*, 334 S.W.3d 559 (Mo.App. W.D.2010), is conclusive, or at least, instructive. This Court disagrees. *Spencer* holds the State's requirement that a convicted criminal admit to his responsibility for the sexual offenses of which he was convicted as a condition for successful completion of the Missouri Sex Offender Program ("MoSOP") is not in violation of the criminal's Fifth Amendment rights. Completion of MoSOP permits a convicted criminal of possible eligibility for conditional release or good-time credit, whereas a parent's unsuccessful completion of court-ordered sex-offender counseling may permit a court to find a justification for terminating parental rights. This is not only an apples to oranges comparison, but an ineffective comparison.

er was Amanda's father. *Id.* at 726. Amanda's parents substantially complied with their case plan in almost all respects, however, the Father refused to admit he abused Amanda, a prerequisite to receiving sexual-offender counseling. *Id.* That court held that a case plan that requires a parent to admit to a criminal act, without an offer of immunity for such an admission, violated that parent's Fifth Amendment rights to refrain from incriminating themselves. *Id.* at 727. Thus, the court, finding that the sexual abuse issue was the only condition leading to the child's removal which the parents had not substantially remedied, "reluctantly" reversed the trial court's award of permanent custody to the county's Children Services. *Id.* at 728.

Likewise, the Illinois Supreme Court held "a trial court may order a service plan that requires a parent to engage in effective counseling or therapy, but may not compel counseling or therapy requiring the parent to admit to committing a crime." *In re A.W.*, 231 Ill.2d 92, 324 Ill.Dec. 530, 896 N.E.2d 316, 326 (2008).

This Court finds unpersuasive these cases which hold that a parent's right against potential self-incrimination trumps a parent's responsibility to reunify with his or her child. For example, in this case, the Children's Division's and trial court's case plan, which requires completing sexual-offender counseling, may subject Father to possible criminal liability.[5] Such a rejection of the services provided to Father, while his children remained under the jurisdiction of the Juvenile Court and the care and custody of Children's Division for more than four years, demonstrates that Father aligned his own interests over those of his children. Father failed to demonstrate the responsibility, interest, and affection we deem essential to the reestablishment of parental care.[6] *See In re Rosalie H.*, 889 A.2d 199, 207–08 (R.I. 2006).

However, in other jurisdictions, we find a compelling compromise. The Vermont Supreme Court held that a juvenile court cannot specifically require parents to admit criminal misconduct in order to reunite the family, because such a requirement violates the Fifth Amendment right against self-incrimination. *In re J.A.*, 166 Vt. 625, 699 A.2d 30, 31 (1997). Nevertheless, while that court struck the case plan requirement that the stepfather admit to sexual abuse, it recognized that requiring parents to admit wrongdoing as part of therapy which is necessary for reunification to ensure the safety of any child involved does not, *per se*, violate the Fifth Amendment:

> We have also recognized, however, the importance of preventing a child from being subjected to an abusive environment and thus have held that reunification plans may require extensive therapy and counseling for sexually abusive parents. Furthermore, if the parents' denial of abuse interferes with effective therapy, then the court may act on that finding to the parents' detriment without offending the Fifth Amendment privilege. Therefore, the additional require-

---

5. Father never specifically states his purpose behind his refusal to complete the sexual-offender counseling besides his claim of innocence.

6. This Court is aware that this too creates its own "Catch 22" as later criminal prosecution could lead to incarceration, thus, preventing reunification. However, "it is not the duty of the court to write laws but to interpret them." *Willard Reorganized Sch. Dist. No. 2 of Greene Cnty. v. Springfield Reorganized Sch. Dist. No. 12 of Greene Cnty.*, 241 Mo.App. 934, 248 S.W.2d 435, 443 (1952). Grant of immunity or any other solution is left to the discretion and determination of the legislative and executive branches of this State.

ment that the stepfather successfully complete counseling was valid and appropriate.

*Id.* (internal citations and quotations omitted).

█ Similarly, in *Matter of Welfare of J.W.,* 415 N.W.2d 879 (Minn.1987), the juvenile court ordered psychological therapy to include an explanation of the death of their nephew before the parents regained custody of their other two children. *Id.* at 881. On appeal, the court concluded that although the juvenile court could not directly require the parents to incriminate themselves in therapy, the court, nevertheless, could require the parents to engage in therapy generally. *Id.* at 883. In so holding, the court reasoned:

> [i]n the lexicon of the Fifth Amendment, the risk of losing the children for failure to undergo meaningful therapy is neither a 'threat' nor a 'penalty' imposed by the state. It is simply a consequence of the reality that it is unsafe for children to be with parents who are abusive and violent.

*Id.* at 884. Accordingly, while that court ordered the deletion of the requirement that the parents explain the death of their nephew to the psychologist, the court, nevertheless, acknowledged that therapy that does not include incriminating disclosures may be ineffective and reduce the parents' chances of regaining their children. *Id.* at 883–84.[7] The Minnesota Supreme Court emphasized that the Fifth Amendment privilege cannot immunize the parents from the consequences of their physical or sexual abuse of their children. *Id.* at 883. Rather, parents still have the burden of

demonstrating that their children can safely be returned to them, and the difficulty in discharging this burden without admitting their own inadequacies is a consequence of their actions which cannot be removed by the Fifth Amendment. *Id.* at 883–84.

To summarize the case law from other courts: (1) exclusively requiring an admission of abuse as a condition of family reunification violates a parent's Fifth Amendment rights; or (2) "terminating or limiting parental rights based on a parent's failure to comply with an order to obtain meaningful therapy or rehabilitation, perhaps in part because a parent's failure to acknowledge past wrongdoing inhibits meaningful therapy, may not violate the Fifth Amendment;" and (3) immunity from criminal prosecution may be necessary to compel incriminating statements required by a case plan. *Dep't of Human Servs. v. K.L.R.,* 235 Or.App. 1, 230 P.3d 49, 54 (2010).

█ Here, however, other significant evidence supported the termination of Father's parental rights. Thus, since the judgment of the trial court is not based solely on Father's failure to complete sexual-offender counseling, the Court abstains from deciding whether forcing a parent to confess to child or sexual abuse in court-ordered therapy as a condition of family reunification violates a parent's privilege against self-incrimination.

In the present case, the trial court's termination of parental rights included a sufficient basis, including: the Children have been in foster care for at least 15 of the last 22 months; a finding by the trial

---

7. This Court notes, "there is a very fine line, although very important, distinction between terminating parental rights based specifically upon a refusal to waive protections against self-incrimination and terminating parental rights based upon a parent's failure to comply with an order to obtain meaningful therapy or rehabilitation ... The latter is constitutionally permissible; the former is not." *In re Interest of Clifford M.,* 6 Neb.App. 754, 577 N.W.2d 547, 554 (1998). However, this Court need not decide where that line be drawn today.

court on February 15, 2008, that Father sexually abused A.M.J.W.; the Children had been under the trial court's jurisdiction since October 2007; other sexually deviant allegations such as Father regularly walking around nude in front of the Children and he and his wife engaging in sexual intercourse in the presence of the Children; the Children's therapists have never recommended that the children have contact with Father since the trial court took jurisdiction in October 2007; and the Children's emotional ties to Father were not substantial. Thus, the trial court's judgment was premised on clear, cogent and convincing evidence that Father violated multiple grounds for termination under subsections 2 and 3 of Section 211.447.5. Further, the trial court did not abuse its discretion as it properly terminated Father's parental rights because a preponderance of the evidence demonstrated that termination was in the best interests of the Children. Admission of Father's unsuccessful completion of sex-offender counseling was not outcome determinative.

Viewing the facts in the light most favorable to affirming the juvenile court's ruling, we conclude the evidence of Father's unsuccessful completion of sex-offender counseling was not the sole basis of the trial court's judgment. The order of termination was supported by substantial evidence based on clear, cogent and convincing evidence, and the termination was in the best interests of the Children, A.M.J.W. and D.L.W. Father's second point is denied.

### C. Point I—Denial of Father's Motion for Continuance

■ "The denial of a request for a continuance rarely is reversible error; yet the trial court enjoys neither an absolute nor an arbitrary discretion, and the trial court's action will be reversed if there has been an abuse of discretion." *In re D.C.,* 49 S.W.3d 694, 698–99 (Mo.App. E.D.2001). Except in "extreme cases where it clearly appears the moving party ... is free of any dereliction[,]" rarely, will an appellate court find that the trial court abused its discretion in denying a motion for continuance. *In re P.D.,* 144 S.W.3d 907, 911 (Mo.App. E.D.2004) (quoting *Bydalek v. Brines,* 29 S.W.3d 848, 855 (Mo.App. S.D. 2000)).

■ We note that termination of parental rights ("TPR") proceedings are an exercise of an awesome judicial power, which this Court does not review lightly. *In re J.S.W.,* 295 S.W.3d 877, 880 (Mo.App. E.D. 2009); *see e.g., In re K.A.W.,* 133 S.W.3d 1, 12 (Mo. banc 2004) (characterizing termination of parental rights as akin to a "civil death penalty"). Yet, while we respect the magnitude of TPR proceedings, we, nevertheless, review a trial court's denial of a motion of continuance for an abuse of discretion. *In re R.M.K.,* 330 S.W.3d 602, 604 (Mo.App. E.D.2011); *In re E.T.C.,* 141 S.W.3d 39, 45–46 (Mo.App. E.D.2004); *In re I.B.,* 48 S.W.3d 91, 98–99 (Mo.App. W.D. 2001); *In re M.P.W.,* 983 S.W.2d 593, 599 (Mo.App. W.D.1999).

*1. The trial court did not abuse its discretion in denying Father's motion for continuance because the motion was not in compliance with Rule 65.03.*

■ Missouri Rule of Civil Procedure 65.03 sets forth the simple but mandatory procedure to properly present a motion for continuance. *Commerce Bank of Mexico,* 667 S.W.2d 474, 476 (Mo.App. E.D.1984); *see also* Rule 65.03. When applying for continuance, Rule 65.03 requires that the motion be made in writing, "accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made

orally." *See* Rule 65.03. "In the absence of compliance with the requirements of the rule, *there can be no abuse of discretion in denying a continuance.*" *In Interest of C.L.L.*, 776 S.W.2d 476, 477 (Mo.App. E.D. 1989) (emphasis added); *see also Cent. Am. Health Scis. Univ., Belize Med. Coll. v. Norouzian*, 236 S.W.3d 69, 80 (Mo.App. W.D.2007).

■ Here, a proper motion for continuance was not presented to the trial court for it to rule upon because Father failed to make both a written application and attach an accompanying affidavit or present a credible person attesting to the facts upon which the motion was based. Rather, Father's counsel orally moved for continuance at the January 19 hearing, without consent from opposing counsel. Father failed to follow the simple, explicit, and mandatory procedure to properly present a motion for continuance.

In support of his proposition that the trial court abused its discretion in denying his motion for continuance, Father cites to *In re J.R.*, 347 S.W.3d 641 (Mo.App. E.D. 2011). In *In re J.R.*, this Court reversed the trial court's denial of a father's motion for continuance in a TPR proceeding. *Id.* at 645–46. In that case, TPR proceedings commenced after a home inspection revealed that the home was unsafe and unsanitary for the children. *Id.* at 642. At the hearing on the TPR petition, the father failed to appear and notify his attorney, although he was aware of the hearing date, had fully participated in the termination process, and had appeared in all but one of the scheduled court hearings. *Id.* at 644. The father's attorney's request for continuance was denied by the trial court and TPR was, thereafter, granted. *Id.* The appellate court reversed, holding that "all of the circumstances" demonstrated that the trial court abused its discretion in failing to grant a continuance to allow the father to participate in the TPR hearing. *Id.* at 646. Such "circumstances" that required reversal included: the parents had resolved the unsanitary and unsafe conditions in their homes, the parents were granted supervised visitation, there was no evidence of the parents physically abusing or sexually assaulting the children, and the parents still maintained a strong family bond despite separation. *Id.* at 646–47. Conversely, the circumstances in this case are dissimilar to the circumstances in *In re J.R.* Here, Father was found to have sexually assaulted his daughter, was not afforded visitation rights in four years, and the family had no strong family bond. We do not find *In re J.R.* to be instructive.

However, more analogous is the case *In re P.D.*, 144 S.W.3d 907 (Mo.App. E.D. 2004). In that TPR case, on September 23, 2003, the court docketed the petition to terminate a mother's parental rights for December 17, 2003. *Id.* at 910. At that September 23 hearing, the mother was present in the courtroom, and her attorney confirmed the docket date via mail. *Id.* Thereafter, on December 17, 2003, mother failed to appear in court and failed to notify her attorney of her non-appearance, causing her attorney to orally apply for a continuance so that mother would have the opportunity to be heard and defend herself. *Id.* The hearing court denied the continuance and the hearing proceeded, finding sufficient evidence to terminate the mother's parental rights. *Id.* On appeal, mother argued the denial of her motion for continuance was an abuse of discretion. *Id.* at 911. This Court affirmed the denial because mother's motion for continuance failed to conform to Rule 65.03, in that the motion was neither in writing nor consented to by opposing counsel. *Id.* at 911–12. Similarly, here, Father's attorney failed to properly apply for a continuance in accordance with Rule 65.03. Further, while

Father generally complied with the TPR proceedings, it was at Father's request that the TPR hearing was moved from January 13, 2012, to January 19, 2012, yet Father still failed to appear or notify his attorney in a timely manner, so as to allow his attorney to make a proper motion for continuance. Father's actions were not free of dereliction.

2. *The denial of Father's motion for continuance did not violate Father's due process rights.*

Nevertheless, Father contends that his due process rights, afforded under the Fourteenth Amendment of the United States Constitution and article 1, section 10 of the Missouri Constitution, were violated when the hearing court denied his motion for continuance, because TPR proceedings directly invoke the fundamental liberty interests of parental rights, familial integrity, and child rearing. *C.J.G. v. Missouri Dep't of Soc. Servs.*, 219 S.W.3d 244, 247 (Mo. banc 2007) ("The state cannot intervene in the parent-child relationship, such as proceedings to terminate parental rights, absent procedures that meet the requisites of due process").

Although Father does not differentiate in his argument between substantive and procedural due process, both are implicated in termination of parental rights proceedings. Accordingly, both are addressed in our analysis.

a. *Father's procedural due process was not violated.*

In order to invoke the requirements of procedural due process, "one must have been deprived of a property interest recognized and protected by the Due Process Clauses." *Moore v. Bd. of Educ. of Fulton Pub. Sch. No. 58*, 836 S.W.2d 943, 947 (Mo. banc 1992). Once a protected interest is found to have been infringed, the court seeks to determine the sufficiency of the procedures provided so as to satisfy constitutional scrutiny. *Belton v. Bd. of Police Comm'rs of Kansas City*, 708 S.W.2d 131, 136 (Mo. banc 1986).

Naturally, termination of parental rights proceedings invoke the fundamental liberty interests of parents and families. *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004) (citing *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Thus, "[w]here, as here, a fundamental right is involved, this Court must be diligent to uphold the requirements of due process and protect the parent's fundamental liberty interest in the parent-child relationship." *In re E.A.C.*, 253 S.W.3d 594, 601 (Mo.App. S.D.2008).

The basis of procedural due process mandates that the government afford adequate and sufficient notice and an opportunity to be heard before deprivation of a property right. *Lile v. Hancock Place Sch. Dist.*, 701 S.W.2d 500, 506 (Mo.App. E.D.1985). Accordingly, due process is accorded where a party is given sufficient notice of a trial and the trial is held regardless of whether the party actually takes advantage of the opportunity to be heard. 16D C.J.S. Constitutional Law § 1777 (citing *In re Marriage of Fishbaugh*, 310 Mont. 519, 52 P.3d 395, 398 (2002)); *see also Moore v. Bd. of Educ. of Fulton Pub. Sch. No. 58*, 836 S.W.2d 943, 947 (Mo. banc 1992) ("a party can waive his due process right to be heard by voluntarily absenting himself from the proceedings").

Furthermore, there is no *per se* rule which requires the physical presence of the parent during a hearing to terminate parental rights, as long as the court affords the parent procedural due process

by other means. *See e.g., In re Interest of L.V.,* 240 Neb. 404, 482 N.W.2d 250, 258–59 (1992).

██ Here, Father was afforded sufficient procedural due process as he was aware of the January 19, 2012 hearing—in fact, Father, himself, requested that date. The hearing court's denial of Father's motion for continuance did not suppress Father's procedural due process. Procedural due process was not lacking because Father was given an opportunity to defend the allegations against him, but chose not to do so.

Moreover, Father was granted a second opportunity on January 26 to explain his non-appearance to the trial court. Father failed to do so, instead, pleading the Fifth as to his whereabouts on January 13 and 19. Again, procedural due process was sufficiently afforded.

*b. Father's substantive due process was not violated.*

██ The substantive dimension of due process "protects individual liberty against certain governmental actions regardless of the fairness of the procedures used to implement them." *Bromwell v. Nixon,* 361 S.W.3d 393, 400 (Mo. banc 2012) (quoting *Flowers v. City of Minneapolis, Minn.,* 478 F.3d 869, 872 (8th Cir. 2007)). In order to successfully establish a violation of an individual's substantive due process rights, the individual "must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition[.]" *Bromwell,* 361 S.W.3d at 400 (quoting *Slusarchuk v. Hoff,* 346 F.3d 1178, 1181–82 (8th Cir.2003) (emphasis in original)).

██ Father's substantive due process was not violated because the trial judge's denial of Father's motion for continuance was not conscience-shocking. As stated *supra,* the trial judge's denial of Father's motion for continuance was not arbitrary, but, rather, was properly within the trial court's discretion. Father offers no evidence or law to the contrary, and this Court finds none.

██ Further, Father contends his due process rights were violated because he was unable to defend the allegations against him as required by *In re E.A.C.,* 253 S.W.3d 594 (Mo.App. S.D.2008). We agree with the court in *In re E.A.C.,* "that in order to protect this fundamental right, due process requires that the parent, whose rights are threatened, must be given an opportunity to defend the allegations against them." *Id.* at 601. However, we disagree with Father that he was not afforded this right. In fact, Father was given the opportunity to defend the allegations against him multiple times, but chose not to utilize that right.

Accordingly, because Father's request for continuance did not comply with Rule 65.03, the trial court did not abuse its discretion in refusing to grant a continuance. Further, the trial court did not violate Father's procedural or substantive due process rights in denying his motion for continuance. Father's first point is denied.

### III.   CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

ROBERT G. DOWD, JR., ANGELA T. QUIGLESS, J., concur.