

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| NEIGHBORHOOD LEGAL SUPPORT OF KANSAS CITY, | ) ) ) | |
| Respondent, | ) ) | WD87057 |
| v. | ) ) ) | OPINION FILED: June 3, 2025 |
| ROBERT ONTMAN, | ) ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jalilah Otto, Judge**

**Before Division One:** Karen King Mitchell, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer, Judges

Mr. Robert Ontman ("Ontman") appeals the judgment, following a bench trial, of

the Circuit Court of Jackson County, Missouri ("trial court"), in favor of Neighborhood

Legal Support of Kansas City's ("NLS") claim of private nuisance against Ontman

requiring Ontman to take actions to abate the nuisance. We affirm.

## Facts and Procedural History

NLS is a non-profit legal organization that facilitates the purchase and repair of

blighted homes. NLS acquired the property at issue ("the property") from its owners and

later conveyed it to Ontman in August 2020 after he successfully applied for the right to purchase and repair it. As part of the parties' agreement, Ontman promised to rehabilitate the property to the point of habitability by October 2021. Ontman failed to do so and this statutory private nuisance lawsuit commenced between NLS and Ontman via petition filed by NLS in October 2022.

In his answer to the petition, Ontman contended his property did not constitute a nuisance. Thus, to prove its claim, NLS requested that Ontman permit an inspection of the property, which Ontman refused. NLS filed a motion to compel the inspection, which was granted by the trial court thereby ordering an inspection to occur prior to the original trial date in August 2023.

On the day before the original trial date of August 18, 2023, Ontman requested a continuance, which was granted by the trial court. The trial court reset the trial date to October 20, 2023, and noted that it would not grant any additional continuances. Following the continuance, NLS and Ontman agreed to a second inspection by NLS of the property on October 12, 2023.

The bench trial began on October 20th but did not conclude on that day. Photographs of the property showing the property's condition were admitted on the first day of trial. The trial court scheduled the second day of trial to take place on December 1, 2023. NLS requested to conduct a third inspection on November 28, 2023. In response, Ontman filed a motion to quash the inspection request along with a motion to dismiss the case on November 27, 2023. The trial court granted Ontman's motion to quash with respect to the request for a third inspection but did not rule upon the motion to

2

dismiss at that time. The bench trial resumed on December 1, 2023, and concluded on that date.

The trial court issued a docket entry denying Ontman's motion to dismiss on March 8, 2024, and also issued its judgment in a separate ruling the same day, finding that the property constituted a nuisance and ordering Ontman to take several enumerated steps to abate the nuisance.

Ontman appealed, raising seven points on appeal. For ease of analysis, we combine some points together and address them out of order.

## Standard of Review

"[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Point VI

In Point VI, Ontman asserts that NLS lacked standing to bring its nuisance suit, but section 82.1025.2[1] clearly confers standing to bring a private civil nuisance action upon any person or entity who owns property within twelve-hundred feet of the alleged nuisance property. Because NLS owns property within twelve-hundred feet of the property in dispute, it had standing to bring this suit.

Point VI is denied.

---

[1] All statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through December 1, 2024, unless otherwise indicated.

**Point IV**

In Point IV, Ontman claims his right to due process was violated in that he did not receive a fair trial because (1) the trial court did not give him an equal amount of time to present his case, (2) the trial court judge interfered with his case by interrupting him and otherwise expressing disinterest in his evidentiary presentation, and (3) his defense at trial was prejudiced by the trial court's failure to rule on his pretrial motions. None of Ontman's due process arguments are supported by the record.

Due process provides the right to a meaningful opportunity to be heard. *E.g., Colyer v. State Bd. of Registration for Healing Arts*, 257 S.W.3d 139, 144 (Mo. App. W.D. 2008) ("Procedural due process requires the opportunity to be heard at a meaningful time and in a meaningful manner."); *Strup v. Dir. of Revenue*, 311 S.W.3d 793, 796 (Mo. banc 2010) ("[D]ue process requires notice and the opportunity to be heard."). Where that opportunity is provided to a party, due process is satisfied, even if the party fails to take advantage of it. *E.g., Greig v. McCaleb*, 638 S.W.3d 600, 604 (Mo. App. W.D. 2021) ("Employer's failure to take advantage of the opportunity to be heard is not a due process failure." (quoting *Wunderlich v. Jensen*, 496 S.W.3d 522, 526 (Mo. App. W.D. 2016))); *In re D.L.W.*, 413 S.W.3d 2, 12 (Mo. App. E.D. 2012) ("[D]ue process is accorded where a party is given sufficient notice of a trial and the trial is held regardless of whether the party actually takes advantage of the opportunity to be heard.").

Here, the trial court provided a clear opportunity for Ontman to present any additional evidence he wanted to present, which Ontman affirmatively declined:

THE COURT: And so I'm going to hold onto these exhibits. All right? Did [Ontman] have any other evidence? Any other witnesses?

ONTMAN: There's always evidence. None that I'll present at this time.

THE COURT: Okay. Do you have any rebuttal?

NLS: No, Your Honor.

THE COURT: Okay. [NLS doesn't] have any. I'm going to show evidence is closed.

Thus, the alleged imbalance of time that Ontman complains of is not the result of the trial court violating his due process rights, but rather his own decision *not* to present further evidence.

Likewise, in the portions of the record cited in Ontman's brief, the trial court does *not* display *any* of the behavior that Ontman complains of. Additionally, Ontman never raised any objection to any in-court or out-of-court commentary or conduct by the trial court that he felt was objectionable. If Ontman believed the trial court was acting unfairly, he was required to object and create a record on that issue to preserve it for our review. *See, e.g., Curry Inv. Co. v. Santilli*, 494 S.W.3d 18, 27 (Mo. App. W.D. 2016) ("[T]he court of appeals cannot consider matters not preserved on the record and contained in an approved transcript." (quoting *Lee v. Ofield*, 847 S.W.2d 99, 100-01 (Mo. App. W.D. 1992))); *Poke v. Mathis*, 461 S.W.3d 40, 43 (Mo. App. E.D. 2015) ("The responsibility to provide a meaningful transcript for review devolves upon appellant and the court of appeals cannot consider matters not preserved on the record and contained in an approved transcript." (quoting *Volvo Fin. N. Am., Inc. v. Raja*, 754 S.W.2d 955, 957

5

(Mo. App. W.D. 1988))).  Because he failed to do so, we have no meaningful record to review these claims and reject them.

Regarding Ontman's final due process complaint, the only purportedly unresolved pretrial motions that Ontman cites in his brief are his two November 27 motions (i.e. the motion to quash NLS's request for a third inspection and the motion to dismiss the case).  The trial court ruled on the motion to quash before trial.  And, although the motion to dismiss was denied post-trial, it did not concern any matter related to the course or scope of the evidentiary trial proceedings, and Ontman has not identified any prejudice he suffered as a result of the timing of the denial of his motion to dismiss.  "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action.  [A]ppellate review is for prejudice, not mere error."  *Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 172 (Mo. App. W.D. 2021) (alteration in original) (quotation marks omitted) (citations omitted).  Because we find no prejudice here, there is no reversible error.

Point IV is denied.

**Point V**

In Point V, Ontman argues that the trial court erroneously allowed lay opinion testimony on the issue of the property's nuisance conditions, asserting that only an expert's testimony can establish a nuisance condition.  We disagree.

Section 82.1027's definition of a nuisance encompasses violations of the City of Kansas City, Missouri Property Maintenance Code ("Code").  In its judgment, the trial court found five violations of the Code:  (1) "missing and damaged siding, including

6

holes in the walls"; (2) "missing, broken, and improperly installed windows"; (3) "major water damage on the interior"; (4) "foundation and structure problems"; and (5) "trash and construction materials improperly stored."

All of these violations were supported by photographs that were admitted into evidence at trial without any objection that the photographs failed to fairly depict the present condition of the property. This Court has had the ability to view these photographs in our review of the record on appeal. The Code violations documented in these photographs, as described above, are so glaring and obvious that a person without any specialized training can readily identify them by looking at the photos, rendering expert testimony unnecessary in this particular case. *See Stone v. Mo. Dep't of Health & Senior Servs.*, 350 S.W.3d 14, 22 (Mo. banc 2011) ("If the fact at issue is 'open to the senses,' the opinion of [a] lay witness is admissible." (quoting *Beuttenmuller v. Vess Bottling Co. of St. Louis*, 447 S.W.2d 519, 526 (Mo. 1969))). The trial court did not err in allowing lay witnesses to testify regarding the clear and unmistakable code violations depicted by the photographs, which constituted sufficient evidence to support the trial court's conclusion that the property qualified as the sort of nuisance contemplated by section 82.1025.

Point V is denied.

**Points II and III**

In Point II, Ontman argues the trial court should not have considered any evidence from NLS's inspections, asserting that only government entities may perform inspections related to nuisance complaints and that NLS lacked this authority as a non-government

7

entity. In Point III, Ontman claims the inspections constituted unreasonable searches, violating his Fourth Amendment rights, and interfered with his property rights without proper due process, violating his Fifth and Fourteenth Amendment rights.

This case demonstrates the relationship between litigants and the courts in relationship to discovery requests during lawsuits. Our country's civil litigation system includes a discovery process that is overseen by a judge (and sometimes the appellate courts in writ proceedings relating to discovery) and is designed to balance the needs of one litigant's privacy rights with another party's legitimate right to obtain relevant factual information relating to the elements of a cause of action alleged in a lawsuit. *See Concerned Citizens for Crystal City v. City of Crystal City*, 334 S.W.3d 519, 523-24 (Mo. App. E.D. 2010) ("[T]he trial court may order any party to produce . . . evidence relevant to the subject matter in the pending action. However, the provisions for discovery were neither designed nor intended for 'untrammeled use of a factual dragnet or fishing expedition.' . . . It is the affirmative duty and obligation of the trial court to prevent the subversion of pre-trial discovery into a 'war of paper' for any reason or purpose." (citations omitted)). Neither right is absolute—as demonstrated in this lawsuit. Here, the trial court permitted *some* inspections of the property by NLS but denied the right for an *additional* inspection requested by NLS after the first day of trial and prior to the second day of trial in this proceeding. On appeal, Ontman does not present any argument, beyond his own conclusory assertion, that the trial court failed to appropriately consider this balance of rights when limiting NLS's discovery requests.

On this topic, our Missouri Supreme Court has stated:

Speaking broadly, every one owes a duty to the state in the judicial [administration] of justice to disclose whatever will serve the ascertainment of the truth. This applies not only to his testimony but to demonstrative evidence—his body, his papers, his chattels and his premises. 4 Wigmore on Evid (2d Ed.) § 2194, p. 653; § 2216, p. 710; § 2221, p. 740. He can be required to leave his home or business and attend court as a witness. By a subpoena duces tecum he can be compelled to bring his chattels into court as evidence. An officer may go upon his premises (without force) to serve civil process and it will not be a trespass. 50 C.J. § 85, p. 486. *We are unable to agree that orders for the inspection of chattels and premises in civil litigation, as a class, are beyond the power of a court because they violate the [due process] rights of the individual.*

But neither do we agree with the view which we understand to be expressed in 3 Wigmore on Evid. (2d Ed.) § 1859-d, p. 990, note 2, that the Constitution has no application to civil discoveries, and that an individual is not protected against an unwarranted court order for the inspection or seizure of his property or premises by the constitutional prohibition against unreasonable searches and seizures, and the due process clause. Sections 11 and 30, art. 2, Constitution of Missouri. *It has been held, and we think rightly, that a court order requiring a litigant to submit for the inspection of his adversary papers **not material to the controversy**, or all his papers, is unconstitutional.*

*State ex rel. Schlueter Mfg. Co. v. Beck*, 85 S.W.2d 1026, 1032 (Mo. banc 1935)

(emphasis added).

In the context of discovery in private civil litigation, the Supreme Court of the United States has made clear that the requirements of relevance and reasonableness together with judicial oversight provided by the rules of discovery satisfy due process privacy concerns of a private litigant. *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 195-96 (1946); *State ex rel. Kansas City Pub. Serv. Co. v. Cowan*, 203 S.W.2d 407, 409-10 (Mo. banc 1947) ("The right of discovery is too ancient and has had too long a history . . . to be questioned now on such constitutional grounds. . . . [T]he search and seizure clause of the Fourth Amendment was not intended to interfere with the power of

9

the courts to compel . . . ; an order for the production of books and papers *which limits the examination to such matters as are pertinent to the issue*, does not infringe the constitutional guaranty against unreasonable search and seizure." (emphasis added) (citations and quotation marks omitted)); *Mentor v. Eichels*, No. 2014-L-097, 2015 WL 1289341, at \*4 (Ohio Ct. App. Mar. 23, 2015) ("[T]he Fourth Amendment requires that searches be reasonable and civil discovery rules, with their regulation of the manner and limitation of the scope of discovery, are presumptively reasonable.").

Here, the trial court's discovery rulings were thoughtful, logical, and legally proper as to both parties in the proceedings below. The inspections ordered were relevant, reasonable, and material to the controversy in the statutorily authorized proceeding.

Points II and III are denied.

**Points I and VII**

In Point I, Ontman argues that NLS violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by filing excessive motions with the trial court and by performing two inspections of the property even though the trial court only ordered one. In Point VII, Ontman asserts that NLS represented him in acquiring the property at issue and that this litigation violates NLS's ethical obligations to him as a former client. Neither of these arguments were raised in any form before the trial court. Because Ontman raises these issues for the first time on appeal, they are not preserved for our review:

10

> [E]ven in a court-tried case, where a post-trial motion is not necessary to preserve an otherwise properly raised issue for appellate review, the appellant must make some effort to bring the alleged error to the trial court's attention. With only rare exceptions, an appellate court will not convict a trial court of error on an issue that was never presented to the trial court for its consideration.

*Lewis v. Lewis*, 671 S.W.3d 734, 741 (Mo. App. W.D. 2023) (citations and quotation marks omitted) (quoting *In re S.H.P.*, 638 S.W.3d 524, 530 (Mo. App. W.D. 2021)); *see also In re E.G.*, 683 S.W.3d 261, 266 (Mo. banc 2024) ("The circuit court cannot have erred in denying a claim that was never presented to it . . . .").[2]

---

[2] Ontman also argues in Point VII that NLS has a financial conflict of interest in the outcome of this case because he claims that NLS owns stock in rental companies that could *theoretically* purchase the property upon Ontman receiving an adverse judgment from the trial court. Aside from failing to develop this speculative argument with any applicable case precedent, Ontman again ignores the plain text of section 82.1025.2 which explicitly provides that a successful plaintiff in a private nuisance action is entitled to assert a claim for damages caused by the nuisance; thus, the statute in question contemplates that a successful plaintiff may be rewarded with a financial benefit from pursuing the cause of action.

Further, the crux of Ontman's complaint to the trial court below in his post-trial motion was that NLS's *witnesses* had a financial conflict of interest in their testimony. Yet, on appeal, Ontman complains that it is *NLS* that has the conflict of interest. We simply will not permit Ontman to change his argument on appeal. *See O'Haver v. 3M Co.*, 698 S.W.3d 730, 748 (Mo. App. W.D. 2024) ("Parties are bound by the position they took in the trial court and will not be heard on a different theory on appeal." (quoting *Barner v. Mo. Gaming Comm'n*, 48 S.W.3d 46, 50 (Mo. App. W.D. 2001))); *Ross-Paige v. Saint Louis Metro. Police Dep't*, 492 S.W.3d 164, 175 (Mo. banc 2016) ("Parties on appeal generally 'must stand or fall' by the theories upon which they tried and submitted their case in the circuit court below." (quoting *Kleim v. Sansone*, 248 S.W.3d 599, 602 (Mo. banc 2008))). And, as to Ontman's complaints about *witnesses* who testified in NLS's case in chief, the trial court gave Ontman ample opportunity at trial to permit Ontman to cross-examine these witnesses about their purported financial interest in the proceeding and its impact on their credibility—which is precisely what the law required of the trial court. *See* § 491.010.1 ("No person shall be disqualified as a witness in any civil suit or proceeding at law or in equity, by reason of his interest in the event of the same as a party or otherwise, but such interest may be shown for the purpose of affecting his credibility.").

Points I and VII are denied.

## Conclusion

The judgment of the trial court is affirmed.[3]

_____
Mark D. Pfeiffer, Judge

Karen King Mitchell, Presiding Judge, and Lisa White Hardwick, Judge, concur.

---

[3] NLS filed a motion to strike portions of the appendix to Ontman's brief because Ontman allegedly included exhibits that were not part of the trial court record. Given our ruling today, the motion to strike is denied as moot.