In re AMANDA W.

[Cite as *In re Amanda W.* (1997), 124 Ohio App.3d 136.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–97–1058.

Decided Nov. 21, 1997.

*Jerry A. Hoffer,* for appellants.

*Patricia J. Clark,* for appellee.

MELVIN L. RESNICK, Presiding Judge.

Appellants, Alan W. and Sandra W., the natural parents of Amanda W., appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, granting permanent custody of Amanda, born March 28, 1985, to the Lucas County Children Services ("LCCS").

On June 29, 1995, LCCS filed a complaint alleging that Amanda was a dependent, neglected, and abused child. Immediate temporary custody of Amanda was awarded to LCCS. An adjudicatory hearing was held on August 8, 1995; the parties agreed that disposition could proceed on the same day. On September 29, 1995, the trial court journalized an entry finding Amanda a dependent, neglected, and abused child and awarding temporary custody to LCCS. Although the court listed several "Findings of Fact" in its judgment, including findings that state that Amanda asserted that her father sexually abused her, the juvenile court never determined, by adjudication, that Alan was Amanda's abuser.

Case plans were formulated in order to provide services leading to a reunification of the family. Nevertheless, on July 15, 1996, LCCS filed a motion for permanent custody of Amanda, alleging that, even though appellants participated in certain aspects of their case plans, both Sandra and Alan refused to admit that Alan sexually abused Amanda. LCCS stated that as a child with special needs, Amanda needed a legally secure placement and that it would be in her best interest to award permanent custody to LCCS.

In a hearing held in January 1997, the evidence offered revealed that Amanda was removed from her home because she disclosed that her father "touches her private parts and puts his private parts in her."

Paula Zaft Bash, Amanda's clinical therapist, testified with regard to Amanda's behavior at the time she was removed from her home. This behavior included a lot of anxiety, a lot of heavy breathing when she would get upset about things, hoarding food, soiling her pants on a regular basis, poor personal hygiene, depression, tearfulness, and "sexual acting out." In describing what constitutes

"sexual acting out," the therapist stated that Amanda "made some inappropriate sexual comments at school, rubbing against other children at school, a lot of masturbation, inappropriate masturbation * * * in front of other people."

Bash further testified that throughout Amanda's therapy, she identified her father as her abuser prior to her removal from the home and indicated that her mother knew of the sexual abuse but told Amanda to keep it a secret. In Bash's opinion, a child who was sexually abused by a parent could safely be returned to the home in either a case where the abusing parent took responsibility for the abuse and received treatment or where the nonabusing parent supported the child and was able to protect the child. Bash was very much against Amanda's being returned to her home absent these safeguards. She also stated that Amanda told her that if she (Amanda) was returned to the home and was again abused by her father, she would not be able to tell anyone about it.

Tamara Mitchell, a caseworker at LCCS, testified as to the services offered to Alan and Sandra after Amanda was removed from the home. These included individual psychological evaluations and psychological counseling for each family member, parenting classes, domestic violence counseling, group counseling for sexual offenders (Alan), group counseling for nonabusing parents of abused children (Sandra), and supervised visitation with Amanda for Sandra.

As noted by Mitchell and the counselors who testified in this case, both parents substantially complied with their case plans by participating in almost all of the services offered. However, while recognizing that Amanda had been abused, both parents persistently denied that Alan was the person who committed the abuse. As a result, Alan was not permitted to participate in group counseling for sexual offenders as set forth in his case plan. In addition, and despite acknowledging that a strong bond existed between mother and child, LCCS viewed Sandra as a mother who was dominated by her husband and who was incapable of safeguarding her child from any further abuse.

In her testimony, Mitchell concluded that it was in the best interest of Amanda to grant permanent custody to the LCCS because the child was unable to protect herself from any further sexual abuse. Amanda's guardian *ad litem* concurred in this opinion.

After the evidentiary hearing, the juvenile court granted the motion for permanent custody. In its judgment entry, the court found:

"[P]ursuant to ORC 2151.414(B)(1) and ORC 2151.414(E)(1) by clear and convincing evidence that the minor child * * * cannot, and should not, be placed with her parents within a reasonable period of time, and that pursuant to ORC 2151.414(D) an award of permanent custody to LCCS is in the child's best interest."

Appellants appeal this judgment and set forth the following assignments of error:

"The grant of permanent custody was a direct violation of [Alan's] Fifth Amendment right against self-incrimination."

"The manifest weight of the evidence was not supportive of a grant of permanent custody."

In their first assignment of error, appellants contend that a case plan that requires a parent to admit that a father sexually abused his child in order to be reunited with that child violates an individual's right against compulsory self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution. Appellee argues that the issue of Alan's abuse was decided when Amanda was adjudicated a dependent, neglected, and abused child and cannot be relitigated at this point. In the alternative, LCCS asserts that appellants failed to expressly invoke the privilege against self-incrimination in the court below, thereby waiving any right to raise a violation of the Fifth Amendment on appeal. Finally, and assuming that appellants can raise the alleged constitutional violation on appeal, LCCS claims that Alan had the option to admit the sexual abuse of his child; therefore, the admission was not compulsory.

The privilege to refrain from compulsory self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States " 'can be claimed in any proceeding, be it criminal or civil, administrative or adjudicatory * * *. [I]t protects any disclosures which the witness may reasonably apprehend could be used in the criminal prosecution or which could lead to other evidence that might be so used.' " *In re Gault* (1967), 387 U.S. 1, 47–48, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527, 557, quoting Justice White, concurring in *Murphy v. Waterfront Comm.* (1964), 378 U.S. 52, 94, 84 S.Ct. 1594, 1611, 12 L.Ed.2d 678, 704. The type of proceeding does not determine the availability of the privilege; rather, it turns upon whether the statement or admission is or may be inculpatory. *In re Gault*, 387 U.S. at 49, 87 S.Ct. at 1455, 18 L.Ed.2d at 558; *In re Billman* (1993), 92 Ohio App.3d 279, 280–281, 634 N.E.2d 1050, 1050–1052.

Furthermore, the privilege is self-executing, that is, it does not have to be expressly raised, in cases where "the individual is deprived of his 'free choice to admit, to deny, or refuse to answer.' " *Mace v. Amestoy* (D.Vt. 1991), 765 F.Supp. 847, 850, quoting *Garner v. United States* (1976), 424 U.S. 648, 657, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370, 379. Thus, if the state, expressly or by implication, imposes a penalty for the exercise of the privilege, the failure to assert the privilege is excused. *Id.,* citing *Minnesota v. Murphy* (1984), 465 U.S. 420, 435, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409, 424–425.

■ In the present case, Alan contends that he was required to admit that he sexually abused his daughter in order to obtain the group counseling required under his case plan. Any statement regarding his sexual abuse of Amanda made by Alan in the context of the counseling offered had to be reported pursuant to R.C. 2151.421 and had the potential as a basis for the criminal prosecution of Alan. *Id.* Any statement concerning Alan's culpability made by Sandra created the potential for criminal charges against her for child endangerment. See R.C. 2919.22. Accordingly, it could be reasonably apprehended that any admission that Alan sexually abused his daughter could lead to criminal prosecution.

■ Moreover, an implicit, and potent, penalty for failure to satisfy the requirements of a particular case plan is the loss of a parent's fundamental liberty right to the care, custody, and management of his or her child. *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171–1172, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–1395, 71 L.Ed.2d 599, 606. The record in this case discloses that Alan and Sandra were made fully aware of the fact that the "failure to admit" would lead to the imposition of this penalty. For example, in her testimony, Bash stated that she told Sandra that the mother's failure to support Amanda by admitting that Alan was the abuser left the agency no choice but to seek permanent custody. Bash also opined that it is necessary for sexual offenders to admit their responsibility and go through criminal proceedings for rehabilitative purposes. Alan's counselor testified that he told Alan that his failure to admit meant that he would not be likely to regain custody of Amanda.

In our opinion, this is the type of compelling sanction that forces an individual to admit to offenses in violation of his right not to incriminate himself. Accordingly, the privilege was self-executing. Therefore, in order to avoid a Fifth Amendment infringement, the state was required to offer Alan and Sandra protection from the use of any compelled statements and any evidence derived from those answers in a subsequent criminal case against either one or both of them. *Lefkowitz v. Cunningham* (1977), 431 U.S. 801, 805, 97 S.Ct. 2132, 2135–2136, 53 L.Ed.2d 1, 6–7; *In re Troescher* (Aug. 5, 1991), Stark App. No. CA–8442, unreported, 1991 WL 160861. The agency afforded these parents no such protection. Accordingly, appellants' first assignment of error is found well taken.

In their second assignment of error, appellants assert that clear and convincing evidence was not offered to support a grant of permanent custody to LCCS.

R.C. 2151.413(A) allows a public or private children services agency to file a motion for permanent custody of a child previously adjudicated abused, neglected, and/or dependent and who is in the agency's temporary custody.

At a hearing on the motion, the agency must offer clear and convincing evidence to establish that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents. If, after considering all the relevant evidence, the court determines, by clear and convincing evidence, that one or more of the conditions listed in R.C. 2151.414(E) exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents. R.C. 2151.414(B)(1). Finally, under R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to that case.

■ Only if these requisites are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. *In re William S.* (1996), 75 Ohio St.3d 95, 661 N.E.2d 738. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

■ The juvenile court found that Amanda could not be placed with her parents within a reasonable time or should not be placed with her parents based on R.C. 2151.414(E)(1). As effective at the time the motion for permanent custody was filed in this case, R.C. 2151.414(E)(1) read:

"(1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purposes of changing parental conduct to allow them to resume and maintain parental duties."

It is undisputed that Alan and Sandra attempted to substantially remedy the condition that caused Amanda to be removed from their home. The sole area of noncompliance was the failure of the parents to admit that Alan sexually abused his daughter. The only way the parents could fully comply with the case plan was to expose themselves to potential criminal prosecution. If they did not comply, they would lose custody of their child. Consequently, the manner in which the LCCS handles situations where a parent is accused of sexually abusing his or her child creates a "Hobson's Choice" wherein any choice made by the parent results in adverse consequences. Thus, in a case where the LCCS

believes that a parent sexually abused his or her child, the children services agency must make reasonable and diligent efforts to offer a case plan for treatment of the alleged sexual offender while protecting his or her individual rights. That was not done in this case. We, therefore, albeit reluctantly, find that the juvenile court's judgment is not supported by clear and convincing evidence. Appellants' second assignment of error is found well taken.

The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is reversed. Costs of this appeal are assessed to Lucas County Children Services.

*Judgment reversed.*

GLASSER and KNEPPER, JJ., concur.