134 Nev., Advance Opinion 59

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE PARENTAL RIGHTS AS TO S.L.; N.R.B.; H.R.B.; AND W.C.B. | No. 71873 |

DONALD B.,
Appellant,
vs.
STATE OF NEVADA DEPARTMENT
OF FAMILY SERVICES; S.L.; N.R.B.;
H.R.B.; AND W.C.B., MINORS,
Respondents.



FILED

AUG 0 2 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

---

IN THE MATTER OF THE PARENTAL
RIGHTS AS TO S.L.; N.R.B.; H.R.B.;
AND W.C.B.

No. 71889

MELISSA L.,
Appellant,
vs.
STATE OF NEVADA DEPARTMENT
OF FAMILY SERVICES; S.L.; N.R.B.;
H.R.B.; AND W.C.B., MINORS,
Respondents.

Consolidated appeals from a district court order terminating appellants' parental rights as to their four children. Eighth Judicial District Court, Clark County; Cynthia N. Giuliani, Judge.

*Affirmed.*

Law Offices of Michael I. Gowdey and Michael I. Gowdey, Las Vegas, for Appellant Melissa L.

Turco & Draskovich, LLP, and Robert M. Draskovich, Las Vegas, for Appellant Donald B.

18-29636

Steven B. Wolfson, District Attorney, and Janne M. Hanrahan, Deputy District Attorney, Clark County,
for Respondent Nevada Department of Family Services.

Legal Aid Center of Southern Nevada, Inc., and Stephen J. Dahl and Amy B. Honodel, Las Vegas,
for Respondent S.L.

Morris Anderson and Lauren D. Calvert, Las Vegas,
for Respondents N.R.B., H.R.B., and W.C.B.

---

BEFORE CHERRY, PARRAGUIRRE and STIGLICH, JJ.

## *OPINION*

By the Court, CHERRY, J.:

Appellants' parental rights were terminated because their oldest child was physically and mentally abused over a period of years while in appellants' home, the younger children witnessed the abuse and were instructed to lie about it, and appellants failed to address the abuse in therapy and continued to insist that the child's injuries were self-inflicted. On appeal, appellants argue that termination of parental rights based on their refusal to admit to the abuse violated their Fifth Amendment rights against self-incrimination. We conclude that although appellants cannot be compelled to admit to a crime, they can be required to engage in meaningful therapy designed to ensure the children's safety if returned to the home. Because appellants did not engage in meaningful therapy and did not demonstrate the insight and behavioral changes necessary to protect the children from future abuse, we conclude that there was no violation of their

 

Fifth Amendment rights. We further conclude that substantial evidence supports the district court's findings of parental fault and that termination was in the children's best interests.

*FACTUAL AND PROCEDURAL BACKGROUND*

Appellants Donald B. and Melissa L. have four children: S.L., N.R.B., H.R.B., and W.C.B.[1] In December 2013, then-fifteen-year-old S.L. appeared at school with a black eye and disclosed to a friend that Donald had hit her. When Child Protective Services (CPS) interviewed S.L., she claimed that she had hit her eye on a cabinet when unloading the dishwasher. A subsequent investigation revealed that S.L. had multiple abrasions and bruises that were consistent with abuse. All four children were removed from the home and placed in the custody of respondent Clark County Department of Family Services (DFS) in January 2014. The children were later placed in their current foster home in May 2014. Once in foster care, the children began to make disclosures to their foster mother about the nature and extent of the abuse S.L. endured while in appellants' home.

DFS filed a protective custody petition alleging that the children were in need of protection because Donald physically abused S.L., Melissa knew of the ongoing abuse but failed to protect S.L., and the three younger children were unsafe in the home. The petition also alleged that Donald had been convicted of felony manslaughter and corporal punishment of a child for the death of his infant child in the 1980s.

---

[1]S.L. is Melissa's daughter and her father is unknown but she has lived with Donald since a young age, and the three other children are the children of both appellants.

Donald and Melissa entered pleas of no contest to the petition and were given court-approved case plans. Donald's case plan noted that Donald denied abusing S.L. and required that he acknowledge that S.L. was physically abused and the emotional damage that it has caused the children, provide a home free from physical abuse, complete physical abuse classes and follow all recommendations, show behavioral changes, and develop an appropriate discipline plan. Melissa's case plan noted that she feels that S.L. is to blame for the family's problems and required that Melissa complete non-offending parenting classes and follow all recommendations, and that she acknowledge that S.L. was physically abused and identify where she did not provide adequate protection.

Donald and Melissa engaged in the requirements of their case plans including an assessment at Red Rock Psychological Services, successful completion of the ABC Therapy program, and participation in individual therapy at Healthy Minds. The assessments from Red Rock found both parents at a high risk for physical abuse/neglect recidivism and recommended individual therapy to address Donald's abuse and Melissa's position of denial. Both parents continued to deny that Donald had abused S.L., and they insisted that the child's injuries were self-inflicted. In the meantime, a criminal case was filed against appellants, and the criminal court entered an order for no contact between appellants and the children. Recorded calls between appellants while incarcerated on the criminal charges contained disparaging remarks about S.L., including Melissa's remarks that she is a "killer kid" and "has a brain of a fucking peanut," and that Melissa "feels sorry for the poor sap who ends up with her."

By the time of the permanency and placement review hearing in January 2015, DFS recommended termination of parental rights

because, even though appellants were engaged in services, they had not provided an explanation for S.L.'s injuries or a plan for preventing their reoccurrence. The district court changed the permanency plan to termination of parental rights.

At the termination trial, S.L. testified that Donald began abusing her around the time when she was in third grade. The abuse included hitting her across the back and face with a belt and buckle causing multiple bruises and black eyes, cutting her wrist with a knife, shooting her hand with a BB gun, knocking out her front tooth, making her lie on the floor and jumping on her chest while wearing his work boots until she passed out, requiring her to stand on her head for 30 minutes at a time, denying her food, and otherwise treating her differently than the other children. S.L. testified that the abuse occurred on a regular basis and Melissa knew of the abuse and covered the injuries on S.L's face with make-up. S.L. stated that Donald would have her and the other children rehearse stories about how her injuries occurred until they could repeat them without hesitation, and that she had denied the abuse to CPS out of fear of her parents.

N.R.B. and H.R.B. testified about Donald's abuse toward S.L. that left bruises on her back and eyes and caused a broken tooth but that their punishments included standing in the corner or a spanking with the hand. Both children indicated they wanted to live with their parents as long as there was no more hitting. The children's foster mother testified that the children disclosed to her instances when Donald abused S.L. and that Melissa was present, and that S.L. had sustained three injuries while in foster care that included two injuries while playing school sports and one injury from a bike accident requiring stitches.

 

A DFS case manager maintained that neither parent had completed their case plans because they had not acknowledged that there was physical and emotional abuse in the home that impacted the children. Donald and Melissa's family therapist at Healthy Minds, David Gennis, testified that they had completed numerous therapy sessions, and, in his opinion, the children would not be at risk from physical harm if reunited with appellants and it was in their best interests to return home. Dr. Gennis acknowledged that he had never spoken with the children and had not seen S.L.'s injuries, and he believed Donald's representations that he had not committed the acts of physical abuse. Dr. Gennis provided two safety plans that included a full-time nanny approved by DFS and installation of video cameras in the home, but he indicated that this monitoring was to protect appellants from further allegations of abuse by S.L.

In December 2016, the district court entered an order terminating appellants' parental rights. The court found parental fault based on clear and convincing evidence that Donald had physically and mentally abused S.L. over a period of years and the injuries were not self-inflicted. The court noted that appellants' therapy did not address the physical abuse and neither parent had shown the insight or behavioral change to protect the children from future abuse. The court also found that the presumptions under NRS 128.109 applied because the children had been in foster care for 30 months, and that termination served the children's best interest because they needed a home free from violence and they had

integrated into their foster family, which was an adoptive resource. Donald and Melissa filed these consolidated appeals from the order.[2]

## DISCUSSION

Because the termination of parental rights is tantamount to the imposition of a civil death penalty, an order terminating parental rights is subject to close scrutiny by this court. *In re Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000). We review questions of law de novo and the district court's factual findings for substantial evidence. *In re Parental Rights as to A.L.*, 130 Nev. 914, 918, 337 P.3d 758, 761 (2014). To terminate parental rights, the district court must find clear and convincing evidence that (1) at least one ground of parental fault exists, and (2) termination is in the child's best interest. NRS 128.105(1); *N.J.*, 116 Nev. at 800-01, 8 P.3d at 132-33. The purpose of terminating parental rights "is not to punish parents, but to protect the welfare of children." *Id.* at 801, 8 P.3d at 133.

### Fifth Amendment rights

Appellants first contend that the district court erred by finding parental fault based on their failure to admit to the abuse of S.L., which violated their Fifth Amendment privilege against self-incrimination. Appellants maintain that an admission of abuse was not necessary since they completed all assessments and counseling required by their case plans, and their therapist testified that an admission of abuse was unnecessary for reunification. DFS argues there was no Fifth Amendment violation because even though parents cannot be compelled to incriminate

---

[2]S.L. joined in the appellate brief filed by DFS, and the three younger children have joined in the briefing by appellants.

themselves, they can be required to demonstrate that the children would be safe in their care, which appellants failed to do.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. It applies to the states through the Fourteenth Amendment. *Allen v. Illinois*, 478 U.S. 364, 368, (1986). The privilege may be invoked in any criminal or civil proceeding when the testimony may incriminate the person in future criminal proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). The state may not compel a person to surrender the privilege by threatening to impose potent sanctions. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805-06 (1977).

Because the parent-child relationship is a fundamental liberty interest, we have held that "a parent may not be compelled to admit a crime under the threat of the loss of parental rights." *In re Parental Rights as to A.D.L.*, 133 Nev., Adv. Op. 72, 402 P.3d 1280, 1285 (2017). In *A.D.L.*, a mother's two children were removed from her care after the youngest child suffered a burn to the face from a clothing iron, and the mother maintained that the burn was accidental and occurred when the hot iron fell from the bedroom dresser while she was preparing for work in the attached bathroom. *Id.* at 1282-83. A petition for protective custody was filed, the mother denied the allegations in the petition, and after an adjudicatory hearing, the juvenile court concluded that the injury was nonaccidental and approved a case plan that, among other things, required the mother to explain the sequence of events that led to the physical abuse and articulate how she would ensure no future abuse occurred. *Id.* at 1283. Over the course of treatment, the mother made substantial progress and her therapist saw no signs that she was an abusive parent. *Id.* at 1283-84. The

mother successfully completed all aspects of her case plan except for admitting that she physically abused the child by holding the iron to the child's face, and she demonstrated to the department of family services' satisfaction that she could effectively parent her children, but the district court terminated her parental rights because she continued to insist that the injury was accidental despite evidence to the contrary. *Id.* at 1284. On appeal, we held that termination of parental rights based solely on a parent's refusal to admit that she intentionally harmed the child violated the mother's Fifth Amendment right against self-incrimination. *Id.* at 1285. Nevertheless, we acknowledged that a parent could be required to engage in meaningful therapy for family reunification and treatment of the problems that led to removal, which may be ineffective without an acknowledgment of the abuse and that a failure to reunify for that reason may not be protected under the Fifth Amendment. *Id.* at 1285-86.

We conclude that the facts in this case are distinguishable from those in *A.D.L.* In *A.D.L.*, the child suffered an isolated injury, the report from family services confirmed that the mother's therapy was effective without an admission, and the termination of the mother's parental rights was based entirely on her refusal to admit the abuse. *Id.* at 1285-86. Here, however, the termination of appellants' parental rights was not based simply on their refusal to admit to the abuse. The evidence of abuse in this case was significantly more egregious and pervasive and showed that Donald physically and emotionally abused S.L. in the home repeatedly over several years, Melissa was aware of the abuse, and the children had been instructed to lie about it. Additionally, the Red Rock assessments indicated that appellants were at high risk to reoffend, and the district court found that they did not meaningfully address the abuse in therapy and continued

 

to insist that S.L's injuries were self-inflicted. Moreover, although Dr. Gennis testified that appellants could reunify despite maintaining their denial of abuse, he admitted that he had not spoken with the children or their therapists about the abuse, he had not seen the injuries, he believed the abuse allegations were unsubstantiated, and his proposed safety plan was intended to protect *appellants* from future allegations of abuse. The district court was in a better position to weigh the testimony, and we will not substitute our judgment for that of the district judge. *See In re Parental Rights as to J.D.N.*, 128 Nev. 462, 477, 283 P.3d 842, 852 (2012). Thus, the district court did not terminate appellants' parental rights merely because they refused to admit to child abuse but instead because appellants did not engage in meaningful therapy designed to ensure that the children could be safe if returned to appellants' home. The risk of losing one's children for failure to undergo meaningful therapy is not a penalty imposed by the state but "is simply a consequence of the reality that it is unsafe for children to be with parents who are abusive and violent." *In re J.W.*, 415 N.W.2d 879, 884 (Minn. 1987). Thus, we conclude that the district court's findings of parental fault did not violate appellants' Fifth Amendment rights against self-incrimination.[3]

---

[3]DFS asserts that at the time appellants were given their case plans, they were offered immunity for any statements made during the course of treatment. Appellants argue that the stipulation regarding immunity was not in writing and was not applicable to disclosures made to DFS. We note that other courts have observed that a grant of immunity can avoid a Fifth Amendment issue. *See In re Amanda W.*, 705 N.E.2d 724, 727 (Ohio Ct. App. 1997) (stating that "to avoid a Fifth Amendment infringement, the state was required to offer [the parents] protection from the use of any compelled statements and any evidence derived from those answers in a

*Parental fault*

The district court found four grounds of parental fault: unfitness, failure to adjust, token efforts, and risk of serious injury to the children if returned to appellants' care. *See* NRS 128.105(1)(b). Because the children had been residing outside the home for 30 months by the time of trial, the district court also found applicable the NRS 128.109 presumption that appellants had made only token efforts to avoid being unfit parents and to eliminate the risk of serious injury. *See* NRS 128.109(1)(a) (providing that if a child is placed outside the home for 14 of any 20 consecutive months, it must be presumed that the parent has demonstrated only token efforts). The district court found that appellants failed to rebut this presumption with a preponderance of the evidence. *In re Parental Rights as to J.L.N.*, 118 Nev. 621, 625-26, 55 P.3d 955, 958 (2002).

Appellants argue they rebutted the NRS 128.109(1)(a) presumption of token efforts because they actively engaged in the requirements of their case plans and their failure to reunify with the children within the statutory time frame resulted solely from their refusal to admit to the abuse. We agree with the district court that appellants failed to rebut the presumption of token efforts. *See In re Parental Rights as to D.R.H.*, 120 Nev. 422, 432-33, 92 P.3d 1230, 1236-37 (2004) (concluding that

subsequent criminal case against either one or both of them"); *Dep't of Human Servs. v. K.L.R.*, 230 P.3d 49, 54 (Or. Ct. App. 2010) (observing that "a properly crafted grant of immunity may ease the friction between the Fifth Amendment right of a parent or caretaker to avoid self-incrimination and the state's authority to advance the best interests of a dependent and at-risk child"). Because the record is limited as to the nature and scope of the immunity offered, we decline to decide whether the immunity in this case eliminated a Fifth Amendment issue.

 

the presumption of token efforts was not rebutted where the parents had failed to adequately address their drug and anger management problems despite being provided extensive services). Appellants participated in services under their case plans but did not meaningfully address the abuse in therapy. Without acknowledging that circumstances in the home needed to change, appellants could not demonstrate that the circumstances would, in fact, change and that the children would be safe from violence and abuse. We further conclude that the district court's other findings of parental fault are supported by substantial evidence. *See In re Parental Rights as to K.D.L.*, 118 Nev. 737, 746-47, 58 P.3d 181, 187 (2002) (finding parental unfitness and a risk of serious injury based on the nature of the father's violent behavior and the potential danger he presented to the children).

*Children's best interests*

Appellants assert that the district court erred in concluding that termination of parental rights was in the children's best interests because the evidence demonstrated that appellants had completed the assessment and counseling requirements of their case plans, the younger three children wanted to return to their home, and Dr. Gennis opined that reunification was in the children's best interests.

Before terminating parental rights, the district court must find that doing so would serve a child's best interests. NRS 128.105(1)(a). NRS 128.005(2)(c) provides that "[t]he continuing needs of a child for proper physical, mental and emotional growth and development are the decisive considerations in proceedings for termination of parental rights." If the child has been out of the home for 14 of any 20 consecutive months, there is a rebuttable presumption that termination is in the child's best interests. NRS 128.109(2). The district court must consider the needs and wishes of

Supreme Court
OF
Nevada

(O) 1947A

12

the child, the services offered to and the efforts made by the parents, and whether additional services would bring about lasting change. NRS 128.107. If the child was placed in a foster home, the district court must consider whether the child has become integrated into the foster family and the family's willingness to be a permanent placement. NRS 128.108.

The district court found that the foster family had provided a safe and loving home for the children for over two years, the children were doing well and had bonded with and integrated into the foster family, and the foster parents were willing to adopt them. N.R.B. and H.R.B.'s wish to return to appellant's custody was conditioned on there being no more violence in the home, and Dr. Gennis' testimony was based on his belief that no abuse had occurred. The district court found that appellants had not addressed the physical abuse such that they could provide a home free from violence. We, therefore, conclude that substantial evidence supports the district court's decision that termination of appellants' parental rights was in the children's best interests.

For the reasons set forth above, we affirm the district court's order terminating appellants' parental rights.

_____, J.
Cherry

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich