NOT DESIGNATED FOR PUBLICATION

No. 123,690

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of
A.T., C.W., L.J.W., L.W., and L.T.,
Minor Children.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed September 10, 2021. Reversed and remanded with directions.

*Jordan E. Kieffer*, of Jordan Kieffer, P.A., of Bel Aire, for appellant.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.


Before BRUNS, P.J., GARDNER and CLINE, JJ.


PER CURIAM: D.T. (Mother) appeals the termination of her parental rights to her five children, arguing the district court lacked sufficient evidence to find she was unfit for the foreseeable future or that termination was in the children's best interests. Because the district court's finding on the foreseeable future of Mother's parental fitness was not supported by clear and convincing evidence, we reverse the termination of Mother's parental rights and remand for further proceedings.


FACTS

The State petitioned the district court for emergency removal of Mother's five children—A.T., C.W., L.J.W., L.W., and L.T.—from both Mother and L.L.W. (Father) after L.J.W. sustained severe burns to her feet while taking a bath in Mother's care. The

1

State claimed the children were children in need of care (CINC) and requested their emergency removal from Mother's home, alleging Mother provided the police with inconsistent statements about the incident and Father failed to protect L.J.W.

Though not directly, the State's petition implied Mother intentionally burned L.J.W.'s feet. According to an investigative report of the incident, Mother provided inconsistent statements to detectives about the events. Mother first told Wichita Police Officer Zachary Ghering that she left C.W. (two years old) and A.T. (four years old) alone in the tub with L.J.W. (two years old) while she was making her infant child a bottle in the kitchen. When she heard L.J.W. crying, she returned to the bathroom and saw all three children in the bathtub, with the hot water running. She turned the hot water off and removed the children before noticing L.J.W.'s feet were burned. But Mother later accounted for the fact that A.T. and C.W. were not burned by claiming she found A.T. standing outside the bathtub and C.W. was straddling the tub while L.J.W. was standing on her tiptoes in the water crying.

The State's petition also insinuated Mother purposefully burned L.J.W.'s feet for soiling a pair of pants. The incident report showed that one of the investigating officers found a pair of soiled pants in Mother's trash. Mother told police and a Department for Children and Families (DCF) worker that L.J.W. was not the child who accidentally soiled the pants and maintained that she did not purposefully hurt L.J.W.

The district court granted the State's request and issued an ex parte protective order on December 18, 2017. The court also held a temporary custody hearing the next day. Mother and Father appeared and waived their right to an evidentiary hearing. The court found probable cause supported removing the children from Mother and Father's care based on the possibility of endangerment to their health or welfare. The court determined it was in the children's best interests to remain in DCF's temporary custody and ordered out-of-home placement.

Mother later entered a statement of no contest to the allegations in the State's CINC petition. On July 11, 2018, the district court adjudicated the children as children in need of care and ordered they remain in DCF custody. The court also approved a permanency plan, requiring both Mother and Father to complete these tasks:

- Obtain and maintain appropriate housing and full-time employment with documented proof;
- obtain clinal assessments and follow recommendations;
- release necessary information;
- abstain from using drugs and alcohol;
- complete substance abuse evaluations and follow the recommendations;
- submit to random urinalysis tests at least twice monthly and random hair tests every 90 days;
- complete parenting and domestic violence class series; and
- refrain from using physical discipline on the children.

The district court held a permanency hearing on July 26, 2018. The court found Mother was adequately progressing toward reintegration and thus determined reintegration was still a viable case plan goal.

The district court held a review hearing on November 15, 2018. At a permanency hearing on March 7, 2019, the district court determined reintegration was no longer a viable goal and ordered the case plan goal be changed to adoption. The State then moved to find Mother and Father unfit and terminate their parental rights to the five children on May 29, 2019, citing the following:

- Physical, emotional, or sexual abuse against the children (K.S.A. 2020 Supp. 38-2269[b][2]);

- failure of reasonable efforts to rehabilitate the family (K.S.A. 2020 Supp. 38-2269[b][7]);

- lack of effort to adjust the circumstances, conduct, or conditions to meet the children's needs (K.S.A. 2020 Supp. 38-2269(b][8]);

- failure to maintain regular visitation, contact, or communication with the children or their custodian (K.S.A. 2020 Supp. 38-2269[c][2]); and

- failure to carry out a reasonable reintegration plan. (K.S.A. 2020 Supp. 38-2269[c][3]).

The matter proceeded to a termination hearing, which was first scheduled for August 2, 2019. The parties agreed to continue the hearing to give Mother and Father more time to complete court orders, and the court set the matter over for November 18, 2019.

Both parents appeared at the November hearing. The parties agreed to continue the termination hearing to February 11, 2020, to allow Mother and Father "more time to complete court orders and demonstrate secondary change." The parents stipulated to present unfitness in exchange for the continuance. Based on the parents' stipulation, the district court found the parents were presently unfit under K.S.A. 2020 Supp. 38-2269(b)(7), (b)(8), and (c)(3). The continuance order also stated the parties agreed that if another hearing was necessary, "the State w[ould] only be required to prove unfitness for the foreseeable future."

The district court ordered DCF to draft a 90-day achievement plan for Mother and Father to follow. According to testimony presented later at Mother and Father's termination hearing, the court ordered DCF to include a task in the 90-day plan for Mother to complete individual therapy. But because of a DCF's worker's oversight, this requirement was left out of Mother's 90-day plan. The DCF worker who made the mistake testified that she believed Mother learned of this requirement the following July.

4

According to the parties, the COVID-19 pandemic caused additional delays. So the termination hearing did not proceed until August 17, 2020. And because the parties could not present their cases in a single day, the court heard additional testimony and closing arguments on September 28, 2020.

Mother requested another continuance at the beginning of the August hearing. She argued that because she made substantial progress toward reintegration since the last hearing, the district court should again allow her more time to complete her case plan. Father also requested a continuance, raising similar arguments and asserting the pandemic created additional issues requiring a continuance. The guardian ad litem acknowledged the parties' concerns but opposed the request for another continuance, arguing the children needed permanence. The district court ultimately denied the parents' request.

At the termination hearing, three of the State's witnesses provided testimony about the burning incident with L.J.W. The State noted that Mother pled no contest—and later tried to withdraw the plea—to aggravated battery in a separate criminal case related to that incident. The State also presented evidence about newly alleged sexual abuse. And related to that evidence, the State argued that as Mother's visitation rights progressed, the children's behaviors and mental health diagnoses worsened. Finally, the State argued Mother failed to show she made any secondary change and emphasized that by the date of the first termination hearing, the children had lived in out-of-home placements for nearly three years.

Mother objected to the use of the State's testimony related to L.J.W.'s burns, arguing the event was more prejudicial than probative because the only remaining issue at trial was foreseeable—not past or present—fitness. But the district court overruled the objection and allowed the testimony.

The State elicited testimony from the investigating officers suggesting Mother burned L.J.W.'s feet as punishment for soiling her pants, emphasizing alleged inconsistencies in Mother's accounts of the event. Officer Gehring testified Mother first told him she had put three of her children in the bathtub, leaving them there for a bit while she left the room. She returned after she heard screaming and noticed the faucet had been turned on, which she assumed one of the children had done. She told the officer she turned down the temperature of the faucet water to cool down the temperature of the bath water, then she removed the children from the tub. She then noticed L.J.W. had blistering starting on her feet. He said during Mother's initial statement, she "made it seem as though all three children were in the tub." After the officer asked Mother why the other two children did not have any burn injuries, he testified Mother told him when she walked into the bathroom, L.J.W. was the only one in the bathtub. Mother said A.T. (the four-year-old) was outside the tub, and C.W. was holding onto both sides of the bathtub and lifting her feet above the water, so she was no longer in the bathtub water.

Officer Gehring testified a pair of soiled pants were discovered in a trash can, which Mother denied were L.J.W.'s. She provided a different outfit, which she claimed L.J.W. had been wearing that day. She claimed the soiled pants were C.W.'s. On cross-examination, Gehring testified that although he believed the pants were probably collected, he was unaware if they were tested to ensure it was L.J.W. who soiled them.

The State also called Dr. Katherine Melhorn, a child abuse pediatrician, who testified L.J.W.'s burns were consistent with a forced immersion, which led her to classify the injuries as child abuse. Dr. Melhorn, however, conceded that L.J.W.'s injuries could be consistent with Mother's explanation that L.J.W.—a two-year-old—was unable to remove herself from the tub and thus sustained the injuries that way. Dr. Melhorn testified that she did not find other injuries indicating prolonged child abuse. And no one recorded finding any injuries on the other children.

6

Father testified on Mother's behalf, maintaining she was a good mother and that he did not fear for the children's safety if returned to her care.

When the burning incident came up during Mother's testimony, the State stopped its examination and noted Mother's pending criminal charges relating to that incident. The State mentioned Mother had not been sentenced and thus she had a Fifth Amendment right under the United States Constitution not to answer questions about how L.J.W. was burned. Mother's attorney pointed out Mother had moved to withdraw her no contest plea, to which the district court responded by noting this fact "would heighten her Fifth Amendment rights." Mother's attorney agreed Mother had a Fifth Amendment right and noted she had advised Mother of this right. The court proceeded to advise Mother of her Fifth Amendment right on the record, including telling her (a) she had a right not to testify during a criminal proceeding, (b) the right did not apply in a civil proceeding, (c) "these types of questions in this civil proceeding could be used against you in the criminal proceeding," and (d) Mother could exercise her Fifth Amendment right in the CINC hearing. The court then recessed the proceeding so Mother could confer with her CINC attorney. After the recess, the CINC attorney advised the court that Mother had not spoken to her criminal attorney in several months and had not discussed the CINC hearing with him. The State responded by stating it was uncomfortable asking Mother questions about the incident without her criminal attorney's knowledge of the CINC proceeding. The State said it would not ask Mother any questions about how the injuries occurred, for that reason.

No one asked Mother about the burning incident on cross-examination or on redirect. The incident came up indirectly, at the end of the State's redirect:

"Q.    [State's Attorney]  Whose fault is it that your kids are in custody? Do you—what
           do you think about that? Have you thought about why this happened, whose fault it
           is? Is it anybody's fault?

7

"A. [Mother] Yeah. I should have paid more attention to my kids, like . . .

"Q. What do you mean you should have paid more attention?

"A. I shouldn't have never left them in the bathroom."

Mother testified about her reintegration progress. Mother explained she obtained suitable housing in January 2020 and continued to live there. She testified she was working for the same employer since June 2020 and maintained she always had a source of income since the initiation of this case.

Mother testified she tried to complete individual therapy, but her intake assessment said that she did not need therapy. She also explained she was not aware she had to complete therapy as a requirement of her achievement plan, nor did her caseworker provide her with any referrals to get into individual therapy. As noted above, the DCF worker who drafted Mother's 90-day plan admitted she mistakenly omitted this requirement from Mother's plan.

Mother testified she tried to maintain a bond with the children by regularly attending visits. She tried to attend some of the children's appointments but believed Saint Francis failed to communicate with her to allow her involvement. Similarly, Mother believed it was unacceptable not to allow Father to help her transport the children from their three separate foster homes. And she felt she was not given adequate opportunity to address the children's behavior issues during visits before DCF workers interjected.

Mother eventually progressed from short, supervised visits to eight-hour, in-home unsupervised visits. Mother testified she did not use any physical discipline on the children during visits and believed it was unnecessary because the children were behaved and happy during visits. L.T.'s foster parent testified that when visits stopped because of the pandemic, Mother still called weekly to talk to L.T. over the phone.

At the end of the termination hearing, the district court found Mother was unfit and that her unfitness was unlikely to change in the foreseeable future based solely on L.J.W.'s burn incident and terminated her rights to all five children. The court weighed the testimony from the witnesses and found Mother submerged L.J.W. into the bathtub, causing the burns on her feet. The court found Mother never "adequately or credibly addressed" what happened during that incident in the CINC proceeding. It pointed out that, while she initially entered a plea in her criminal case, she later withdrew that plea, characterizing that withdrawal as "second thoughts." The court also remarked that Mother "should have made some disclosure to a therapist because that was one order that was critical to this case that you simply did not complete." Based on Mother's "refusal to acknowledge what actually happened" during the burn incident proceeding, the court found Mother was unfit and would not be fit in the future.

The district court found termination of Mother's rights was in the children's best interests, considering the case had been on file for 32 months and the "primary consideration is as to their physical, mental, and emotional health."

After finding Father was not responsible for L.J.W.'s injuries, the district court allowed Father to retain his rights and continued his case to March 1, 2021, to address the newly raised sexual abuse allegations.

ANALYSIS

Mother argues the district court erred by terminating her parental rights because there was not clear and convincing evidence to support the finding that her parental unfitness was unlikely to change in the foreseeable future and that termination of her parental rights was in the children's best interests. Mother disputes the district court's finding that she submerged L.J.W.'s feet, causing the burns. She also disputes the court's reliance on this incident, and her failure to admit the State's version of events, as

9

sufficient basis to support the court's finding that she would be unfit for the foreseeable future.

A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding the care, custody, and control of the parent's child. *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008); see also *In re X.D.*, 51 Kan. App. 2d 71, 73-74, 340 P.3d 1230 (2014) (parent's right to the control, custody, and care of a child is a fundamental right). As a result, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof that the parent is unfit because of "conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2020 Supp. 38-2269(a); see *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). Clear and convincing evidence is an "intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt." 286 Kan. at 691.

> "Appellate courts will uphold termination of parental rights if, after reviewing all the evidence in the light most favorable to the prevailing party, they deem the district court's findings of fact to be highly probable, *i.e.*, supported by clear and convincing evidence. Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine factual questions. [Citation omitted.]" *In re Adoption of Baby Girl P.*, 291 Kan. 424, 430-31, 242 P.3d 1168 (2010).

The district court must also determine whether termination is in the children's best interests. See K.S.A. 2020 Supp. 38-2269(g)(1). That conclusion is supported by a preponderance of evidence and is reviewed for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1105, 1115-16, 336 P.3d 903 (2014).

When determining whether to terminate an individual's parental rights, the district court must consider a list of nonexclusive factors set out in K.S.A. 2020 Supp. 38-2269(b). Here, the State asked the court to apply K.S.A. 2020 Supp. 2269(b)(2), (b)(7), and (b)(8). Although, based on their stipulation, the court had already found both parents presently unfit under K.S.A. 2020 Supp. 2269(b)(7) and (b)(8) at the November 2019 termination hearing, the court only relied on K.S.A. 2020 Supp. 2269(b)(2) in determining Mother's parental rights should be terminated at the September 2020 completion of the termination hearing. But see K.S.A. 2020 Supp. 38-2269(f) ("any one of the . . . factors standing alone may, but does not necessarily, establish grounds for termination of parental rights").

K.S.A. 2020 Supp. 38-2269(b)(2) allows the district court to terminate parental rights to a child already adjudicated as a child in need of care if it finds by clear and convincing evidence "conduct toward a child of a physically, emotionally or sexually cruel or abusive nature."

Because the district court only relied on K.S.A. 2020 Supp. 38-2269(b)(2) and the incident involving L.J.W. in finding Mother's unfitness would continue, the court needed to find that Mother's conduct as it related to that incident was unlikely to change in the foreseeable future. See K.S.A. 2020 Supp. 38-2269(a). Kansas law provides that a court may predict a parent's future unfitness based on his or her history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). And foreseeable future is determined from the child's perspective of time. K.S.A. 2020 Supp. 38-2201(b)(4); *In re M.H.*, 50 Kan. App. 2d at 1170-71.

Here, the district court only identified two reasons for finding Mother's unfitness would continue for the foreseeable future: (a) Mother violated a court order requiring her to engage in individual therapy and (b) Mother refused to admit to the abuse. We do not find clear and convincing evidence supports the court's first reason and we believe, under

11

the circumstances, the second stated reason, standing alone, is an insufficient basis to support a finding of future unfitness.

First, the district court's finding that Mother violated a court order by failing to engage in individual therapy is not clearly and convincingly supported by the record. The DCF worker responsible for drafting Mother's 90-day plan for reintegration admitted she left this requirement out of Mother's plan, and Mother testified she was unaware of any requirement that she undergo individual therapy. In fact, Mother testified that her intake assessment said she did not need therapy, and her caseworker never provided her with referrals for individual therapy. While the DCF worker testified she believed Mother eventually learned of this requirement, the testimony is conflicting, at best. When reviewing all the evidence presented on this issue, we do not find it highly probable that Mother was aware of an individual counseling requirement, or that she violated a court order requiring individual counseling.

Since we must disregard the district court's first reason as unsupported, we are left with determining whether Mother's refusal to admit to abusing her child is sufficient basis to support the court's finding that Mother's unfitness was unlikely to change in the foreseeable future. Under all the facts here, we find it is not.

When Mother was on the stand at the evidentiary hearing, the State, Mother's attorney, and the district court all agreed that questions about the burning incident implicated Mother's Fifth Amendment right against self-incrimination. See *State v. Brown*, 286 Kan. 170, 172-73, 182 P.3d 1205 (2008) ("The Fifth Amendment to the United States Constitution provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.' This privilege against self-incrimination is made applicable to the states through the Fourteenth Amendment Due Process Clause."). In fact, the court even remarked that Mother's withdrawal of her plea "heightened" that right and advised Mother that her statements here could be used against her in the

12

criminal proceeding. The State purposely refused to question Mother at the hearing on this basis. Yet, despite acknowledging Mother's constitutional right not to admit to the crime, the court relied on her failure to admit to the crime as its only basis to terminate her parental rights.

In *Brown*, Brown's baby was taken to a hospital with severe injuries. The baby's injuries contradicted Brown's explanation of what happened, so a CINC investigation ensued. Brown's baby and two other children were removed from the Browns' home. Throughout the CINC proceeding, the Browns maintained their innocence. Because the State believed the Browns were withholding the truth about what happened, it did not recommend reintegration and "'persistently pressured'" the Browns to admit how the baby sustained the injuries. 286 Kan. at 171. Finally, on the day the Browns' parental rights were to be relinquished, Brown went to the sheriff's office and gave a statement admitting on the night in question, the baby would not stop crying, and Brown "'squeezed him too hard.'" 286 Kan. at 172. The State then charged Brown with aggravated battery and abuse of a child. Brown moved to exclude his confession from the criminal proceedings as not voluntary. The district court suppressed the confession, which was affirmed on appeal. 286 Kan. at 181-82.

In suppressing Brown's statement, the district court relied on two out-of-state cases, *In re Amanda W.*, 124 Ohio App. 3d 136, 705 N.E.2d 724 (1997), and *In re J.A.*, 166 Vt. 625, 699 A.2d 30 (1997), which held a court cannot specifically require the parents to admit to criminal misconduct in order to reunite the family, because this requirement violates the Fifth Amendment. *State v. Brown*, 37 Kan. App. 2d 726, 730-31, 157 P.3d 655 (2007), *aff'd* 286 Kan. 170, 182 P.3d 1205 (2008). The Court of Appeals expanded the analysis by pointing out the inherent conflict such a situation presents, which forces a parent to choose between two fundamental rights under the Constitution. 37 Kan. App. 2d at 731-32 (noting "the privilege to refrain from compulsory self-incrimination is guaranteed by the United States Constitution" and "[t]he right of parents

13

to make decisions concerning the care, custody, and control of their own children is considered a fundamental right and is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution").

Just like the defendant in *Brown*, by requiring Mother to admit to intentionally burning L.J.W. to avoid termination of her parental rights, the district court placed Mother in a "Catch 22" position:  Mother had two choices, both of which had negative ramifications. The court essentially compelled her to choose between confessing guilt in abusing her own child or losing her parental rights, which forced her to choose between two fundamental rights under the Constitution. *Brown*, 37 Kan. App. 2d at 730-31. We recognize the Supreme Court has declined to adopt an "absolute rule" that requiring an admission of abuse as a condition of reunification violates a parent's rights under the Fifth Amendment, and we do not attempt to adopt such a rule here. Nonetheless, we find a parent's refusal to self-incriminate, standing alone, is insufficient basis to terminate her parental rights. *Brown*, 286 Kan. at 180-81.

As the Supreme Court cautioned in *Brown*, we do not set out rules governing how the State should conduct CINC investigations or treatment plans other than to reiterate that CINC proceedings based on those investigations and intervention plans must remain in constitutional limits. 286 Kan. at 180.

We do not find Mother's refusal to confess under these circumstances, and standing alone, constitutes clear and convincing evidence that in the foreseeable future Mother would not adjust her conduct to meet the needs of her children. Further, as to the district court's finding of current unfitness, it appears to have mistakenly ignored Mother's November 2019 stipulation and its prior finding on this issue. As noted above, when the parents appeared in November 2019, the court found them both presently unfit under K.S.A. 2020 Supp. 38-2269(b)(7) (failure of reasonable efforts to rehabilitate the family); K.S.A. 2020 Supp. 38-2269(b)(8) (lack of effort to adjust the circumstances,

14

conduct, or conditions to meet the children's needs); and K.S.A. 2020 Supp. 38-2269(c)(3) (failure to carry out a reasonable reintegration plan), based on the stipulation they entered in exchange for a continuance. The parties agreed, and the continuance order reflected that the evidentiary hearing would only address future unfitness. The record does not reflect that Mother withdrew that stipulation or the parties modified their agreement as to the content of the evidentiary hearing. Yet, the district court's journal entry after the evidentiary hearing states it relied only upon K.S.A. 2020 Supp. 38-2269(b)(2) as a basis for its finding that Mother was currently unfit and to which she had not stipulated.

Since the district court did not explain its failure to consider Mother's stipulation or its prior finding, we are compelled to reverse both the finding of future unfitness and the finding of current unfitness. The court's ultimate decision appears to hinge on a mistake of fact, which we are not in a position to correct. We remand this matter to the district court for further proceedings on all findings. Since we are remanding for further proceedings, we need not address the district court's conclusion that termination was in the children's best interests.

Reversed and remanded with directions.